**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X   **Docket No.**
ERVISA ISMAILAJ,

                       *Plaintiff,*   **COMPLAINT**

   -against-

                                                 **PLAINTIFF DEMANDS**
CFGI, LLC and ANGELA BARCELOS,       **A TRIAL BY JURY**
*Individually,*

                       *Defendants.*
------------------------------------------------------------X

Plaintiff ERVISA ISMAILAJ ("Plaintiff"), by her attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York Human Rights Law, 15 N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et. seq*. ("NYCHRL"), and seek damages to redress the injuries they suffered as a result of being **discriminated against, subjected to discriminatory harassment and a hostile work environment on the basis of her national origin (Albanian) and perceived religion (Muslim), retaliated against, and ultimately terminated by her employer after complaining of the unlawful discrimination.**

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1981, and 28 U.S.C. §§ 1331 and 1343.

1

3. The Court has supplemental jurisdiction over the claims that Plaintiff has brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York or the acts complained of occurred therein.

5. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 23, 2020 against CFGI, LLC; (b) receiving a Notice of Right to Sue from the EEOC on September 3, 2020; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

**PARTIES**

6. Plaintiff is an Albanian female resident of the State of New York, County of New York.

7. Upon information and belief, Defendant CFGI, LLC ("CFGI") is a domestic limited liability company, organized and existing under the laws of the State of New York.

8. Upon information and belief, Defendant CFGI employs fifteen or more employees.

9. Upon information and belief, Defendant ANGELA BARCELOS ("BARCELOS") is a "Partner" at Defendant CFGI and had the authority to make personnel decisions for the company. Defendant BARCELOS was Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant BARCELOS had the authority to hire, fire or affect the terms and

conditions of Plaintiff's employment, or to otherwise influence the decisionmaker of the same. Upon information and belief, Defendant BARCELOS is Greek-American.

## MATERIAL FACTS

10. On or about March 3, 2019, Plaintiff began working for Defendant CFGI as a "Senior Manager" in the company's Risk Advisory Group. Plaintiff was based at the company's office located at 340 Madison Avenue, New York, New York 10173.

11. Plaintiff's compensation comprised of a base salary of $165,000.00, an incentive compensation in addition to her base salary as part of the CFGI Incentive Compensation Program, and commission bonus up to 5.0% of the total first-year fees generated from each client she "solely solicit[ed] on behalf of CFGI" and "a commission bonus equaling 2.5% of the total first-year fees generated from each new, separate, and distinct service [that Plaintiff] solely solicit[ed] on behalf of CFGI through an existing CFGI client."

12. According to Plaintiff's employment agreement, Plaintiff was also "eligible to participate in the Senior Manager Initiatives Bonus Program, which entitles [her] to earn up to $10,000.00, less applicable and appropriate withholdings and deductions, each calendar year based on [her] performance and participation in the following areas of focus: New Business Development, Staff Development, Firm Initiatives (e.g. Mentoring Program, Training, Performance Evaluation Process, Newsletter etc.), and Existing Client Development and Management."

13. Plaintiff was also eligible for benefits, including medical insurance, dental insurance, vision insurance, flexible spending plan, life insurance, AD&D insurance, short and long-term disability insurance, 401(k), and other work/life and savings programs.

14. Plaintiff's 2020 expected salary was approximately $169,000.00 plus commission, an incentive compensation in addition to her base salary as part of the CFGI Incentive Compensation Program, the Senior Manager Initiatives Bonus Program, and benefits.

3

15. Starting about two months after the beginning of Plaintiff's employment at Defendant CFGI, Plaintiff was exposed to a hostile work environment wherein she was subjected to hostility related to her national origin (Albanian) and her perceived religion (Muslim) by her Greek-American supervisor Defendant BARCELOS and a group of other coworkers that upon information and belief were influenced in their opinions related to Plaintiff's national origin and perceived religion by Defendant BARCELOS.

16. Defendant BARCELOS was based out of the Boston office of Defendant CFGI but would visit the New York office regularly – approximately every two months.

17. On or about May 9, 2019, Defendant BARCELOS was in Defendant CFGI's New York office and attended an Audit Committee meeting where Plaintiff was also present.

18. After the meeting, Plaintiff was speaking with a client who mentioned pursuing a music major before getting into accounting. Plaintiff then mentioned that she had taken violin lessons as a child.

19. To Plaintiff's disbelief, Defendant BARCELOS who was close by and had overheard their conversation, stated "They give music lessons in Albania?" making Plaintiff feel extremely uncomfortable, offended, and embarrassed.

20. Plaintiff understood this comment to be perpetuating the stigmatized image of Albanians as not well-educated or academically developed people.

21. Defendant BARCELOS' comment was particularly offensive given Defendant BARCELOS' Greek national origin, the decade-long tension between Greeks and ethnic Albanians, and the negative stereotypes that a number of individuals of Greek decent continue to promulgate against ethnic Albanians.

22. Soon after that conversation, Defendant BARCELOS started continuously degrading and harassing Plaintiff during, including yelling at her and speaking to her in a demeaning and

4

        condescending manner that based on her comment about Plaintiff's national origin was clearly based on her stereotypical beliefs and prejudices against Albanian individuals.

23. Defendant BARCELOS did not treat any of the American staff in that manner.

24. By way of example, Defendant BARCELOS would purposefully delay or refuse to sign contracts with clients that Plaintiff worked with in an effort to sabotage Plaintiff's work.

25. By way of another example, Defendant BARCELOS was constantly blaming Plaintiff for terms that were not included in the contracts with clients, despite the fact that it was a client decision not to include them.

26. By way of a third example of Defendants' intolerable treatment, between in or around October 2019 and in or around December 2019, BARCELOS would knowingly and willingly schedule Plaintiff for meetings and calls during times at which Plaintiff already had scheduled doctor's appointments on the firm calendar. As a result of these missed doctor's appointments and the unreasonable disregard for Plaintiff's medical needs, Plaintiff's physical health was negatively impacted.

27. In or around October 2019, Plaintiff reached out to Michael Muccio ("Muccio"), the Co-Office Managing Partner for Defendant CFGI's New York Office, to complain about Defendant BARCELOS' harassing behavior.  Plaintiff specifically mentioned that she believed that Defendant BARCELOS was treating her differently because of her national origin and mentioned that there had been discriminatory comments related to Plaintiff's national origin.  Plaintiff mentioned Defendant BARCELOS being constantly aggressive towards Plaintiff and speaking to her in a demeaning and humiliating manner.  Plaintiff also asked Muccio if she could be assigned to a different Partner.

28. Muccio told Plaintiff that he would speak to Defendant BARCELOS about Plaintiff's complaints.

29. Around that time, during a work dinner event, another Senior Manager at Defendant CFGI (who was soon after promoted to Managing Director), Angela Depoy ("Depoy"), who upon information and belief was also of Greek national origin, asked everyone at her dinner table where they were from and what religion they practiced.

30. When it was Plaintiff's turn to answer, she stated that she was Albanian and started explaining that all three major religions were present in Albania but that people were not allowed to practice them during communism.

31. Depoy then stated "Whatever. Albania is Greece anyway." making Plaintiff feel extremely uncomfortable and offended, especially given the history of recurring tensions between Greece and Albania.

32. Depoy also asked Plaintiff multiple times if she was Muslim, again making Plaintiff feel very uncomfortable.

33. Plaintiff tried to explain that she was not Muslim and that religion was not really practiced in Albania.

34. About a week after the dinner, Plaintiff mentioned Depoy's comments to Defendant BARCELOS and stated that they made her feel uncomfortable. Defendant BARCELOS laughed Plaintiff's complaints off and advised her to simply talk to Depoy about it.

35. Defendant BARCELOS continued to overly scrutinize, excessively micromanage Plaintiff's work, and berate her in front of the entire Risk Advisory team, which stood in stark contrast to the way that the rest of the team was being treated.

36. In or around October 2019, Melanie Piperno ("Piperno"), another employee within the same team as Plaintiff, also asked Plaintiff about her religion and stated that she thought that Plaintiff's name was a Muslim name because she had met a girl at a Starbucks with Plaintiff's name that was Muslim, which made Plaintiff feel extremely uncomfortable.

6

37. That same day, Piperno made another derogatory comment about a Managing Director who had a Middle Eastern name. Piperno made a comment about his accent and stated, "where the heck is this dude from and where do we get these people from?"

38. Plaintiff felt extremely uncomfortable by this comment and perceived it to mean that non-American and presumably Muslim employees were not welcomed in the company.

39. Plaintiff complained to another Senior Manager at Defendant CFGI about Piperno's comments who told her to complain to Defendant BARCELOS since there was no real Human Resources Department.

40. On a number of occasions, Piperno told Plaintiff that she should "go all Albanian on them," perpetuating the stereotype that Albanians are aggressive and hostile. Plaintiff felt extremely uncomfortable by Piperno's comment, which was repeated to Plaintiff about four times from in or around November 2019 to January 2020.

41. In or around January 2020, Plaintiff complained to Defendant BARCELOS about Piperno's comments but once again Defendant BARCELOS simply told Plaintiff to speak with her about it and did not take any further action.

42. Immediately after Plaintiff complained of discrimination, Defendant BARCELOS heightened the scrutiny of Plaintiff's work and had another employee of the Risk Advisory Group reach out to former clients that Plaintiff had worked with in an effort to collect negative feedback about her.

43. Around this time, Plaintiff was also denied a $10,000.00 bonus despite the fact that she met all the criteria for receiving it.

44. In fact, Plaintiff had to go out of her way to meet all the criteria for the bonus and get involved with projects outside the Risk Advisory Group since Defendant BARCELOS was purposefully excluding Plaintiff from initiatives that would lead her to meet the criteria for

the bonus.

45. Plaintiff spoke to Jeff Sihpol ("Sihpol"), the Vice President, Finance & Administration of Defendant CFGI, about receiving a bonus and he admitted that Plaintiff was indeed entitled to a bonus but stated that it was up to Defendant BARCELOS whether or not Plaintiff would receive the bonus.

46. Upon information and belief, all non-Albanian employees under the supervision of Defendant BARCELOS that fulfilled the bonus requirements did receive their bonus.

47. Moreover, Defendant BARCELOS would find ways to charge Plaintiff's clients with additional added fees instead of adjusting the rates to comply with the initial agreements.

48. Plaintiff complained about this practice on multiple occasions but it persisted.

49. On or about April 13, 2020, Plaintiff was terminated for alleged "client issues."

50. Upon information and belief, Defendant BARCELOS decided to terminate Plaintiff in retaliation to her engaging in the protected activity of complaining of discrimination.

51. On or about April 15, 2020, Plaintiff emailed Sihpol and again complained about the discrimination and unfair treatment that she had been experiencing.

52. Upon information and belief, since Plaintiff's termination, Defendant BARCELOS and other agents of Defendant CFGI, including Partner Daniel Shafrir, have been tarnishing Plaintiff's professional reputation by broadly broadcasting throughout the company that Plaintiff was a "train wreck," had "issues with clients," and was fired due to "performance issues."

53. Despite Plaintiff's complaints, Defendants failed to sufficiently investigate the allegations and to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment.

54. Defendants were well aware of all of the above discriminatory comments and actions that

Plaintiff was being subjected to throughout her employment at Defendant CFGI.

55. Similarly situated non-Albanian employees were treated more favorably than Plaintiff.

56. Plaintiff was not only qualified to perform the duties of her job, she excelled at her position and accomplished a 600 percent growth within her time working at Defendant CFGI. Upon information and belief, no other employee within Plaintiff's team achieved such a high growth level.

57. Defendant CFGI condoned, supported, ratified, and furthered the discriminatory and hostile conduct.

58. Defendant CFGI willingly ignored its obligations to prevent discrimination in the workplace - to the detriment of Plaintiff.

59. Defendants CFGI's lack of action to help Plaintiff with regard to the open and well-known harassing behavior, fueled by animus toward Albanian and/or Muslim individuals, meant that Defendant CFGI was acquiescing to the discrimination.

60. Despite Defendant CFGI's knowledge of the discriminatory actions against Plaintiff, Defendant CFGI did not make any effort to remedy the situation.

61. Throughout her employment, Plaintiff felt humiliated, stressed, angered, fearful and frustrated.

62. Plaintiff was terminated because of her national origin and perceived religion, and in retaliation for engaging in protected activities.

63. Defendant CFGI allowed for a work environment to exist wherein the complainers were retaliated against and attacked with adverse employment actions for complaining about discrimination in the workplace.

64. Defendant CFGI, its employees, agents, representatives, and/or subordinates had no good faith business justification for their individual and collective actions against Plaintiff.

65. Defendants' actions and conduct were intentional, grossly negligent, and intended to harm Plaintiff.

66. As a result, Plaintiff was unlawfully humiliated, degraded and belittled, suffered violations of their rights, suffered mental and emotional distress, experienced loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, special damages, humiliation, stress, anxiety, embarrassment, special damages, and other emotional distress.

67. Plaintiff also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

68. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

69. Punitive damages are warranted against all Defendants.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII
### (Against Defendant CFGI)

70. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

71. This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of the Corporate Defendants.

72. 42 USC 2000e-2 (a), states in relevant part:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, **religion**, sex, or **national origin** . . .

73. Plaintiff was discriminated against and harassed based on her national origin (Albanian) and perceived religion (Muslim) by her supervisor.

10

## AS A SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII
### (Against Defendant CFGI)

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

75. Title VII, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

    "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

76. Defendant CFGI engaged in unlawful employment practices prohibited by Title VII, by discriminating against Plaintiff with respect to the terms, conditions or privileges of her employment because of her opposition to its unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

77. Plaintiff repeats and s each and every allegation made in the above paragraphs of this Complaint.

78. New York State Executive Law § 296 provides that,

    1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, **creed**, color, **national origin**, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

79. Defendants engaged in unlawful discriminatory practices by discriminating against Plaintiff because of her national origin (Albanian) and perceived religion (Muslim).

11

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

81. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

82. Defendants engaged in unlawful discriminatory practices by retaliating against Plaintiff because of her opposition to the unlawful employment practices of the Defendants.

## AS A FIFTH CAUSE OF ACTION
## AIDING AND ABETTING UNDER THE NYSHRL
## (Against Defendant BARCELOS)

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

84. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

85. Defendant BARCELOS engaged in unlawful discriminatory practices in violation of New York State Executive Law § 296(6) as set forth herein.

## AS A SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

87. The New York City Administrative Code § 8-107(1) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived

> age, race, **creed**, color, **national origin**, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person … to discriminate against such person in compensation or in terms, conditions or privileges of employment.

88. Defendants engaged in unlawful discriminatory practices in violation of New York City Administrative Code § 8-107(1)(a) by creating and maintaining discriminatory working conditions and otherwise discriminating against Plaintiff because of her national origin (Albanian) and perceived religion (Muslim).

## AS A SEVENTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

90. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

91. Defendants engaged in unlawful discriminatory practices in violation of New York City Administrative Code § 8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

## AS AN EIGHTH CAUSE OF ACTION
## AIDING AND ABETTING UNDER THE NYCHRL
## (Against Defendant BARCELOS)

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

93. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

13

94. Defendant BARCELOS engaged in unlawful discriminatory practices in violation of the New York City Administrative Code § 8-107(6), by aiding, abetting, inciting, compelling, and/or coercing the above discriminatory, unlawful, and retaliatory acts.

## JURY DEMAND

95. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYSHRL, and the NYCHRL in that Defendants discriminated against Plaintiff on the basis of her national origin and religion, and retaliated against Plaintiff for complaining of discrimination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
November 24, 2020

                                      **PHILLIPS & ASSOCIATES,**
                                      **ATTORNEYS AT LAW, PLLC**

By: _____
      Brittany A. Stevens, Esq.

        Katerina Housos, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
T: (212) 248 – 7431
F: (212) 901 – 2107
bstevens@tpglaws.com
khousos@tpglaws.com